IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-01842-CMA-MEH

PHILLIP J. RUBIN,

      Plaintiff,

v.

BRETT HILLING, Colorado Highway Patrolman, and
JOHN DOES 1 and 2, Routt County Sheriffs,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendant Brett Hilling's Motion to Dismiss Plaintiff's Complaint [filed on December 20, 2012; docket #19].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket # 20].  The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication of the motion.  For the reasons that follow, the Court respectfully RECOMMENDS the present motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by

## BACKGROUND

### I.      Procedural History

On July 13, 2012, Plaintiff, proceeding *pro se*, initiated this action by filing a "Complaint & Jury Demand" alleging deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983 (Docket #1.)   On August 8, 2012, Plaintiff was ordered to cure deficiencies in his complaint. (Docket #6.)   On September 18, 2012, Plaintiff filed an Amended Complaint.   (Docket #7.) Plaintiff was again ordered to file an amended complaint on September 21, 2012 for, among other things, failing to allege sufficient facts to hold individual defendants liable for deprivation of his constitutional rights.   (Docket #8 at 3.)   Plaintiff filed a Second Amended Complaint on October 22, 2012.   In this operative pleading, Plaintiff seeks compensatory and special damages, as well as injunctive relief, for Defendant's conduct in allegedly having acted with deliberate indifference to a substantial risk to his safety and to his serious medical needs in violation of the Eighth Amendment, and for allegedly violating his Fourteenth Amendment right to due process and equal protection under the special relationship doctrine and the danger creation theory by refusing to give him medical assistance while he was in Defendant's custody. (Docket #9.)

On December 20, 2012, Defendant filed the present motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6)[2] asserting that he is entitled to qualified immunity for individual capacity claims because Plaintiff has failed to plausibly allege violations of his constitutional rights under the Eighth and Fourteenth Amendments.   (Docket #19.)   Plaintiff filed a response to Defendant's motion on January 16, 2013, arguing that qualified immunity does not apply because Defendant violated clearly established law, that Defendant violated the Eighth

---

the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2] Defendant also mentions Fed. R. Civ. P. 12(b)(1), but the Court concludes that the Defendant makes no argument challenging this Court's subject-matter jurisdiction in his motion.

Amendment by failing to provide him with medical care, and that Defendant violated his Fourteenth Amendment rights under the special relationship doctrine and the danger creation theory by denying him medical attention while in the Defendant's custody.  (Docket #32.) Defendant filed a reply brief in support of the motion on January 30, 2013 essentially repeating his original arguments.  (Docket #34.)

## II.   Statement of Facts

The following are factual allegations made by Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On July 15, 2011, Defendant arrested Plaintiff for driving under the influence ("DUI") at 5:07 p.m. in Steamboat Springs, Colorado.  (Docket #9, at 3.)  Upon his arrest, Plaintiff told Defendant that he felt ill and had acid reflux because of what he had eaten for lunch.  (*Id.*)  Once Plaintiff was taken to jail, he began to feel weak and nauseous and experienced shortness of breath and ringing in his ears.  (*Id.*)  He also sweated and vomited.  (*Id.*)  Plaintiff asked Defendant for emergency medical assistance, but Defendant denied his request.  (*Id.*)  Sometime after asking for medical help, Plaintiff passed out and hit his head on the floor.  (*Id.* at 4.)  After Defendant revived Plaintiff with his foot, Plaintiff "believed [he] was having a stroke" and again asked for emergency medical assistance, which was denied.  (*Id.*)  Plaintiff was detained for five hours and experienced "a panicked state" during that time.  (*Id.*)

Before Plaintiff was released, Defendant John Doe 1 attempted to force Plaintiff to sign a document stating that he had refused a sobriety test.  (*Id.*)  Defendant John Doe 2 watched as this happened.  (*Id.*)  The Plaintiff's wife posted bail and took him to the emergency room at the Yampa Valley Medical Center in Steamboat Springs.  (*Id.* at 5.)  The hospital determined that his

"blood pressure was so high [the Plaintiff] was on the verge of stroking" and gave Plaintiff a medical prescription and advised him to remain in bed. (*Id.*) Two days later, Plaintiff was readmitted to the emergency room for "high blood pressure, fainting, and hyperventilation." (*Id.*)

## STANDARD OF REVIEW

### I.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.,* 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 662.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80 Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.  Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. New Mexico,* 113 F.3d 1170, 1173–74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.; see also Peterson v. Shanks,* 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989)).  A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is

patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry,* 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall,* 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

Defendant argues that: (1) Plaintiff's First Claim fails to state a viable claim for relief under the Eighth Amendment; (2) Plaintiff's Second Claim fails to state a viable claim for relief under the Fourteenth Amendment; (3) Defendant is entitled to qualified immunity; and (4) Plaintiff's Third Claim fails to state a viable claim against Defendant for alleged coercion in admitting to refusing a sobriety test. The Court will begin by determining whether Defendant is entitled to qualified immunity. Because the qualified immunity analysis includes an evaluation of the merits, the Court will address the Defendant's first and second arguments sequentially within the qualified immunity discussion.

### I.    Qualified Immunity

Defendant asserts an entitlement to qualified immunity with respect to each of Plaintiff's § 1983 claims. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his

constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815-16, 818, 172 L. Ed. 2d 565 (2009)).

In determining whether Defendant is entitled to qualified immunity, the Court will evaluate each alleged constitutional violation in turn. To begin, the Court will analyze whether Plaintiff properly asserts the Defendant's personal participation. Next, the Court will analyze whether the facts alleged give rise to a plausible claim for relief under the Eighth Amendment. Finally, the Court will consider Plaintiff's due process and equal protection claims under the Fourteenth Amendment.

### A.   Personal Participation

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). Thus, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted). In other words, the Section 1983 liability is properly imposed "upon individual defendants who act with

the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Dodds*, 614 F.3d at 1201.

The Plaintiff's First Claim sufficiently alleges the personal participation of Defendant. Plaintiff alleges that Defendant arrested him for a DUI, that Plaintiff told Defendant he was experiencing some illness, and that Defendant did not provide Plaintiff with medical attention. The Plaintiff's Second Claim also sufficiently alleges Defendant's personal participation. There, Plaintiff alleges that Defendant was in a "position of trust" with him and that Defendant "denied [him] desperately needed medical assistance." (Docket #9 at 4.)

Defendant also argues the Plaintiff fails to allege his personal participation in the Third Claim. Actually, the Plaintiff fails to name Defendant Hilling altogether in his Third Claim. Rather, Plaintiff alleges that John Doe 1 and John Doe 2 attempted to coerce him into admitting to refusing to sign a sobriety test. Plaintiff does not allege any facts indicating that Hilling was in a supervisory role over John Doe 1 and John Doe 2 or that Hilling had any relationship to their actions. Thus, despite whether the Third Claim can be construed as a constitutional claim, Hilling's personal participation argument has no application to it. Accordingly, because Plaintiff only names Defendant Hilling in his First and Second Claims, the remaining analysis will focus on these claims.

B.      **Eighth Amendment Claim**

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir.1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).  Pre-trial detainees are "entitled to the degree of protection

against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury." *Estelle,* 429 U.S. at 104-05. Prisoners may also have an Eighth Amendment claim if prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35, 113 S. Ct. 2475, 2482, 125 L. Ed. 2d 22 (1993).

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell,* 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1246-47 (10th Cir. 2008). The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan,* 471 F.3d at 1159 (quoting *Kikumura,* 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura,* 461 F.3d at 1293 (quoting *Farmer v. Brennan,* 511 U.S. 825, 838, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)).

The Court construes the Plaintiff's First Claim to assert an Eighth Amendment claim based on the delay of medical assistance.[3]   The Court will analyze Plaintiff's claim with the aforementioned standards in mind.

  1.  *Objective Standard*

In order to meet the objective standard of an Eighth Amendment claim under a failure to prevent harm theory, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  A "medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 P.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  Whether "a medical need is sufficiently serious" is not limited to "the symptoms presented at the time the prison employee has contact with the prisoner." *Mata v. Saiz*, 427 P.3d 745, 753 (10th Cir. 2005).  "[T]he question raised by the objective prong of the deliberate indifference test is whether the alleged harm . . .  is sufficiently serious . . . , rather than whether the symptoms displayed to the prison employee are sufficiently serious." *Id.*

---

[3] The Court construes Plaintiff's First Claim to also include a claim against Defendant under 18 U.S.C. § 2340 (2001).  This statute is not applicable here because it makes it an offense to "commit or attempt[] to commit torture [outside the United States]." 18 U.S.C. § 2340A(a) (2001). The statute was enacted to implement the Convention Against Torture and "evinces an unmistakable congressional intent to apply the statute extraterritorially. . . . Congress's concern was not to prevent official torture within the borders of the United States, but in nations where the rule of law has broken down and the ruling government has become the enemy, rather than the protector, of its citizens" *U.S. v. Belfast*, 611 F.3d 783, 808, 811 (11th Cir. 2010); *see, e.g.*, *U.S. v. Emmanuel*, No. 06-20758-CR, 2007 WL 2002452, at *4 (S.D. Fla. July 5, 2007) (charging Liberian commander of Liberian Antiterrorist Unit under 18 U.S.C. § 2340A for events that took place in Liberia).  Additionally, the statute does not create a private right of action. 18 U.S.C. § 2340B (2001).  Thus, Plaintiff has failed to state a claim under 18 U.S.C. § 2340.

A delay in medical care "'only constitutes an Eighth Amendment violation where the plaintiff can show [that] the delay resulted in substantial harm.'" *Mata*, 427 P.3d at 751 (quoting *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001).  Substantial harm may be met either when "the more timely receipt of medical treatment would have minimized or prevented the [ultimate] harm" or when the plaintiff suffers an "intermediate injury, such as the pain experienced while waiting for treatment." *Kikumura*, 461 F.3d at 1292.

Under certain circumstances, even a delay of hours may result in substantial harm. *See Mata*, 427 P.3d at 755 (collecting cases).  For example, in *Sealock v. Colorado*, the plaintiff told a correctional officer at approximately 1:30 a.m. that he "had a crushing pain in his chest," was "having trouble breathing," and "had been vomiting all night." 218 F.3d 1205, 1207-09 (10th Cir. 2000).  The plaintiff was told to wait until 6 a.m. to see a physician. *Id.* at 1208.  After seeing a physician at the correctional facility's infirmary at 8 a.m., he was moved to a hospital where it was determined that "he had suffered a major heart attack." *Id.*  The court held that the hours-long "pain and suffering" experienced by the plaintiff due to the delay in medical treatment was sufficient to "establish[] the objective element of the deliberate indifference test." *Id.* at 1210.  The court also noted that because of the severity of a major heart attack, the plaintiff would have met the objective prong "[e]ven if [he] failed to show that his heart was damaged by the delay, [because], we believe he has shown that his need was sufficiently serious to require prompt medical attention." *Id.*

In *Kikumura*, the plaintiff suffered from "hyponatraemic encephalopathy, a serious medical condition caused by low sodium levels" that is considered a "medical emergency." 461 F.3d at 1274.  The plaintiff was initially treated by a doctor at 3:30 p.m., but that doctor failed to properly diagnose the hyponatraemic encephalopathy and sent the plaintiff back to his cell.  *Id.*

At 10:20 p.m., the plaintiff arrived at the prison's infirmary where, after spending hours with untreated hyponatraemic encephalopathy, the doctor determined that he was "at the point of death." *Id.* at 1275. The court concluded that the severity of the illness and the "tortuous" pain allegedly experienced due to delayed medical care satisfied the "objective component of a deliberate indifference claim." *Id.* at 1292-93. In *Oxendine*, the plaintiff severed his finger in a cell door and a facility doctor surgically reattached it. 241 F.3d at 1277. Less than eight days after the surgery, the finger began to blacken but the doctor did not seek specialist care for at least two weeks. *Id.* By that time, "a substantial portion of the reattached finger had already been lost to decay." *Id.* at 1278. The court concluded that the plaintiff experienced sufficient pain due to the delay to support a claim of deliberate indifference. *Id.* at 1278-79.

In this case, Plaintiff claims that he experienced "shortness of breath," "vomiting," and that he "passed out and [his] head hit the floor." (Docket #9 at 3, 4.) Plaintiff claims that he was "in a panicked state" for close to five hours. (*Id.* at 4.) Plaintiff has failed to show how any of these intermediate injuries rise to the level of substantial harm. In *Sealock*, the plaintiff's intermediate injury was the pain he suffered due to the delay in medical treatment for a "major heart attack." 218 F.3d at 1210. In *Kikumura*, the plaintiff suffered from the severe side effects of a "medical emergency." *Id.* at 1274. In *Oxendine*, the plaintiff's injury related to the rot of his finger. 241 F.3d at 1278. Shortness of breath, vomiting, and even temporary loss of consciousness do not rise to the levels of substantial harm recognized by other courts. *See Kikumura*, 461 F.3d at 1292-93 (holding "severe vomiting," "extreme cramps," and confusion due to brain damage caused by hyponatremia were substantial intermediate harms).

Plaintiff also alleges that after being released, the hospital determined that his "blood pressure was so high [he] was on the verge of stroking." (Docket #9 at 5.) But, Plaintiff has

failed to show how a "more timely receipt of medical treatment would have minimized or prevented" his ultimate injury, high blood pressure. *Kikumura*, 461 F.3d at 1292. Plaintiff experienced a "panicked state" for five hours and after being released, his wife "immediately" took him to the emergency room where he was given medication for high blood pressure. (Docket #9 at 4, 5.) Two days after he was released, and while outside of the Defendant's custody, Plaintiff returned to the emergency room for "high blood pressure, fainting, and hyperventilation." (*Id.* at 5.) The fact that Plaintiff experienced the same illnesses outside of the Defendant's custody demonstrates that a five-hour delay in treatment while in the custody of the Defendant did not increase his risk for high blood pressure—the risk was already present. In any event, "[a]lthough high blood pressure may mandate treatment by a physician in the form of medication, suffering high blood pressure alone has been found *not* to constitute a sufficiently serious medical condition for purposes of the Eighth Amendment." *Rainey v. Boyd*, No. 12-cv-00564-CMA-MEH, 2012 WL 3778356, at *10 (D. Colo. Aug. 15, 2012).

Because Plaintiff has failed to demonstrate how the alleged delay in medical treatment meets the objective element of substantial harm of the deliberate indifference test, Plaintiff has not pled sufficient facts to show that the Defendant violated his constitutional rights under the Eighth Amendment and, therefore, Defendant is entitled to qualified immunity.

2. *Subjective Standard*

However, even if Plaintiff could meet the objective element of the deliberate indifference test, Defendant would still be entitled to qualified immunity because Plaintiff has failed to establish the subjective element of the deliberate indifference test. The subjective component is met if the plaintiff demonstrates a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell,*

471 F.3d 1155, 1159 (10th Cir. 2006) (quoting *Kikumura,* 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  *Kikumura,* 461 F.3d at 1293 (quoting *Farmer,* 511 U.S. at 838).  This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm."  *Beauclair v. Graves,* 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata,* 427 F.3d at 752).  "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition."  *Mata,* 427 F.3d at 755.  However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show [that] the delay resulted in substantial harm.'"  *Id.* at 751 (citing *Oxendine,* 241 F.3d at 1276). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001).

Determining whether a government official knew of a substantial risk to a detainee's health can be based on "inference from circumstantial evidence" and "from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842; *see also Sealock* 218 F.3d at 1210-11, 1213 (affirming denial of summary judgment where there was evidence that at least one defendant had been informed of plaintiff's possible heart attack and where plaintiff exhibited symptoms consistent with a heart attack).  A government official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002).

In *Childress v. Harms*, the plaintiff was taken to a county jail after police "determined he was so intoxicated that he was a danger to himself."  449 F. App'x 758, 759 (10th Cir. 2011).  After the plaintiff complained of "dizziness and ringing in his ears," two nurses evaluated him

and agreed that he was intoxicated.  *Id*.  Several hours later, the plaintiff was reexamined and a nurse attributed his confusion and slurred speech to intoxication.  *Id*.  Approximately one hour later, the plaintiff was taken to the hospital where it was determined that he had suffered a stroke. *Id*.  The plaintiff then filed suit for deliberate indifference.  *Id.* at 760.  The Tenth Circuit, affirming the district court, held that the plaintiff's treating nurse was not deliberately indifferent. *Id.* at 762.  Even though the treating nurse "recognized the possible symptoms of a stroke [including slurred speech, dizziness, limping, and elevated blood pressure] in [the plaintiff], those symptoms were also common to alcohol intoxication."  *Id.* at 760-61.  Because the nurse believed the plaintiff was suffering from intoxication, rather than from a stroke, he did not "[know] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 760-761 (quoting *Mata*, 427 F.3d at 756).  The court also concluded that the question of whether the nurse "should have done more to diagnose the source of [the plaintiff's] symptoms is a question of negligence" and medical negligence is not a constitutional wrong under the Eight Amendment.  *Id.* at 761.

In this case, Plaintiff was arrested for a DUI.  Like in *Childress*, the symptoms exhibited by the Plaintiff, such as "nausea and vomiting," that may have been associated with high blood pressure, are also associated with intoxication.  (Docket #9 at 3.)  Additionally, unlike the nurse in *Childress*, who "recognized the possible symptoms of a stroke," Plaintiff does not allege that Defendant recognized the symptoms of high blood pressure.  449 F. App'x at 761.  Instead, Plaintiff only alleges that he asked for emergency medical assistance, without telling the Defendant why he believed he needed it.  *See* (Docket #9 at 3, 4.)  Taken together, the "inference" based on this "circumstantial evidence" is that Defendant did not disregard a substantial risk of harm, but rather that the Defendant attributed the Plaintiff's illness to his supposed intoxication.

Finally, while the plaintiff in *Childress* met the objective standard of the deliberate indifference test because he suffered a stroke, Plaintiff here was diagnosed with high blood pressure.  (Docket #9 at 5.)  High blood pressure, unlike a stroke, is not "a sufficiently serious medical condition for purposes of the Eighth Amendment."  *Rainey*, 2012 WL 3778356, at *10. Therefore, even if Defendant knew the Plaintiff's symptoms occurred because of high blood pressure, Plaintiff still would not meet the subjective standard for the deliberate indifference test because high blood pressure is not a "substantial harm."

Because Plaintiff has failed to demonstrate that Defendant knew of and disregarded a substantial harm faced by the Plaintiff, he has not met the subjective standard of the deliberate indifference test.  Plaintiff has failed to meet both the objective and subjective components for any claims he has brought pursuant to the Eighth Amendment.  Because the Court concludes that Plaintiff has failed to state a plausible constitutional claim under the Eighth Amendment in this case, the Court need not proceed with an analysis as to whether Plaintiff's rights were clearly established.  Therefore, the Court recommends the District Court find Defendant Hilling is entitled to qualified immunity with respect to Plaintiff's alleged Eighth Amendment claims, and grant Defendant's motion to dismiss the Eighth Amendment claim.

### C.      **Fourteenth Amendment Claims**

Plaintiff alleges that Defendant violated his Fourteenth Amendment rights to due process and equal protection under the special relationship doctrine and the danger creation theory by refusing to give him medical assistance while he was in Defendant's custody.  Generally, in order "[t]o show a deprivation of a protected interest . . . in violation of substantive due process protection, a plaintiff must demonstrate that the government officials acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"

16

*Deray v. City of Colorado Springs, Colo.,* No. 11-cv-02639-MSK-CBS, 2012 WL 1901220, at

*6 (D. Colo. May 25, 2012) (quoting *Ellis ex rel. Estate of Ellis v. Ogden City,* 589 F.3d 1099,

1101 (10th Cir. 2009)).  "'The "ultimate" standard for determining whether there has been a

substantive due process violation is whether the challenged government action shocks the

conscience of federal judges.'"  *Id.* (quoting *Graves v. Thomas,* 450 F.3d 1215, 1220 (10th Cir.

2006)).  "To satisfy this standard, a plaintiff must do more than show that the government actor

intentionally or recklessly caused injury to the plaintiff by abusing or misusing government

power.  Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of

potential or actual harm that is truly conscience shocking." *Livsey v. Salt Lake Cnty.,* 275 F.3d

952, 957–58 (10th Cir. 2001) (quoting *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 528

(10th Cir. 1998)).

The Fourteenth Amendment does not "impose an affirmative obligation on the State to

ensure that" its citizens are not deprived of life, liberty, or property without "due process of law."

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).  However, the

State does have an affirmative duty to protect these interests when it "restrain[s] the individual's

freedom to act on his own behalf—through incarceration, institutionalization, or other similar

restraint of personal liberty." *Id.* at 200.  Based on this exception, a state may have an

affirmative duty towards a citizen under either the "special relationship doctrine" or a "danger

creation" theory.  *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995); *see also DeShaney*, 489

U.S. at 199-200 ("[W]hen the State takes a person into its custody and holds him there against

his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for

his safety and general well-being.").

17

"A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Uhlrig*, 64 F.3d at 572. "If the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a "special relationship" during such restraint to protect that individual from violent acts inflicted by others." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998). A pretrial detention forms such a relationship. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). The special relationship doctrine, like the danger creation theory, is only applicable to "private act[s] of violence by a third party." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (holding the state was not responsible under either a danger creation theory or under the special relationship with its employee when he was injured by a fellow police officer); *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.6 (10th Cir. 2012) (noting the danger creation exception more broadly includes private violence rather than merely third party violence); *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) ("Under the "special relationship" exception, liability may attach to a state actor for the violence of a *third party* if the state restrained the plaintiff's personal liberty and that restraint hindered the plaintiff's freedom to act to protect himself from the third party") (citing *Armijo*, 159 F.3d at 1261) (emphasis added).

To state a claim under the danger creation theory, a plaintiff must establish that: "(1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that

risk, and (6) the conduct, when viewed in total, shocks the conscience." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1251 (10th Cir. 2008).

Although this point was not raised by Defendant, Plaintiff acknowledges that Defendant is a Colorado State Trooper.  (Docket #9 at 3.)  The Court notes that because Defendant is a state actor, neither the special relationship doctrine nor the danger creation theory is applicable as these exceptions are relevant only when the state fails to protect a plaintiff from the actions of a third party when the plaintiff is in a special relationship with the state or when the state creates a danger to the plaintiff.  *See Moore*, 438 F.3d at 1042 (stating the danger creation theory was inapplicable where police officer was injured by fellow police officer); *Ruiz,* 299 F.3d at 1178, 1185 (allowing, but ultimately denying, claim against state defendants for violation of special relationship doctrine and danger creation theory when private day care service severely injured appellant's child); *Uhlrig*, 64 F.3d at 571 (stating "the conduct complained of in the instant case was committed by a private third party . . . rather than by a state actor, Plaintiff must demonstrate either (1) the existence of a special custodial relationship between the plaintiff and the state; or (2) that the state recklessly created the danger that caused the constitutional violation."); *Armijo*, 159 F.3d at 1262-64 (denying grant of summary judgment under danger creation theory after appellant's son committed a private act of violence by committing suicide after being taken home by school officials).

Regardless of this point, Defendant is still not liable under either the special relationship doctrine or a theory of danger creation because Plaintiff has not alleged conduct that "shocks the conscience."  *See Moore*, 438 F.3d at 1042 (holding "even if either the danger creation or special relationship theory were applicable, it would not relieve Plaintiff of his duty to allege actions that shock the conscience.").   In this case, Plaintiff has failed to establish that the conduct of

Defendant was conscience shocking, a general requirement for a violation of a special relationship and the sixth element of a danger creation claim. Conscience shocking conduct involves "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig*, 64 F.3d at 573. "[I]ll-advised, inappropriate, or ill-considered" actions taken by the state does not "shock the conscience of federal judges." *Livsey*, 275 F.3d at 958. "[D]*eliberate* decisions of government officials to deprive a person of life, liberty, or property," such as stomach pumping, paddling a student, and intentionally destroying an inmate's property, have been found to shock the conscience. *Moore*, 438 F.3d at 1040 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (emphasis in original).

Here, Plaintiff does not accuse Defendant of taking any deliberate action to harm him, but rather of failing to provide him with medical assistance. Plaintiff came under Defendant's custody on a charge of DUI and exhibited symptoms associated with intoxication such as "nausea and vomiting." (Docket #9 at 3.) Plaintiff was released after five hours and thereafter received treatment for high blood pressure. (*Id.* at 4, 5.) Because these allegations, at best, suggest only that Defendant might have been negligent in not providing Plaintiff with medical attention, Plaintiff has not alleged conscience shocking conduct. Therefore, Plaintiff fails to state a claim for violation under the Fourteenth Amendment under the special relationship doctrine and the danger creation theory.

Plaintiff has also failed to establish the first, third, fourth, and fifth elements required under the danger creation theory. To meet the first element of the "danger creation" theory, a plaintiff must "demonstrate affirmative conduct on the part of the State Defendants that created or increased the danger . . . [and] [a]ffirmative conduct for purposes . . . should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and

duration." *Ruiz*, 299 F.3d at 1183.  However, "if the danger to the plaintiff existed prior to the state's intervention. . . , the state would not be liable because it could not have created a danger that already existed." *Armijo*, 159 F.3d at 1263-64 (affirming denial of summary judgment against parents of child who committed suicide after being suspended from school because of evidence that school officials increased risk of death by sending student home when he was distraught and threatened violence).

Plaintiff has failed to demonstrate that Defendant created or increased the danger faced by Plaintiff for two reasons. First, as Plaintiff recounts, he told Defendant at the time of his arrest that he "wasn't feeling well and [was] experiencing what [he] believed to be acid reflux." (Docket #9 at 3.)  Thus, Plaintiff began to feel ill prior to coming under Defendant's custody and the Defendant could not have created this risk.  Second, two days after being released from the custody of Defendant, Plaintiff was "admitted again to the emergency room for high blood pressure," the identical injury Plaintiff alleges he suffered while being held by Defendant.  (*Id.* at 5.)  This suggests that the Defendant's actions did not create or increase the danger faced by Plaintiff.  If Defendant had created or increased the danger faced by Plaintiff, it is not plausible he would suffer the exact same injury, high blood pressure, two days after leaving the custody of Defendant.

Plaintiff has failed to allege sufficient facts to support the third element of the danger creation theory, that Defendant's conduct put Plaintiff "at substantial risk of serious, immediate, and proximate harm." *Robbins*, 519 F.3d at 1251.  Plaintiff's ultimate injury was high blood pressure, but high blood pressure does not rise to a level of serious harm. *See Rainey*, 2012 WL 3778356, at *10*; see also Armijo*, 159 F.3d at 1263 n.7 (comparing cases meeting the standard for danger creation theory with those that do not meet the standard).

Finally, Plaintiff's complaint does not allege enough facts to show that his risk of harm was "obvious or known" or that Defendant "acted recklessly in conscious disregard of that risk." *Robbins*, 519 F.3d at 1251.  An act is reckless if "'it reflects a wanton or obdurate disregard or complete indifference to risk,' and that reckless intent is established if the state 'actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences.'" *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 P.3d 1226, 1238 (10th Cir. 1999) (citation omitted). "[R]*egardless of the circumstances preceding the act,* a negligent act that is directly responsible for causing harm to the victim never constitutes a substantive due process violation because such an act never constitutes a constitutional deprivation of life, liberty, or property." *Gray*, 672 P.3d at 929 (emphasis in original).

Plaintiff alleges that he informed Defendant that he was experiencing "shortness of breath, ringing in [his] ears, weakness, sweating, nausea and vomiting" and that he asked for "emergency medical attention."  (Docket #9 at 3.)  However, Plaintiff does not allege that Defendant knew that he had high blood pressure.  Although Plaintiff did "pass out," this alleged fact does not automatically mean that Defendant knew of any risk to Plaintiff, especially considering Plaintiff was arrested on charges of DUI.  (Docket #9 at 4.)  Even if Defendant should have been aware that Plaintiff was at risk for injury, this implicates only Defendant's negligence, which does not give rise to a constitutional claim.

Plaintiff has failed to demonstrate that Defendant violated his Fourteenth Amendment rights under either the special relationship doctrine or the danger creation theory.  Because the Court concludes that Plaintiff has failed to state plausible claims under the Fourteenth Amendment in this case, the Court need not proceed with an analysis as to whether Plaintiff's

rights were clearly established.   Thus, the Court recommends the District Court find Defendant

Hilling is entitled to qualified immunity with respect to Plaintiff's alleged Fourteenth

Amendment claims, and grant Defendant's motion to dismiss the Fourteenth Amendment claims

against Defendant.

## II.      Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously

so as to promote the liberal rules of pleading while protecting the interests of justice.  *Cayman*

*Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989).   As such, in

this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the

plaintiff has been provided notice and an opportunity to amend the complaint to cure the

defective allegations.  *See Bellmon*, 935 F.2d at 1109-10.

Here, this is Plaintiff's second amended complaint.  In Plaintiff's deficient first amended

complaint, he identified Routt County as liable without stating specific facts to implicate Routt

County in a violation of his constitutional rights, did not allege sufficient facts to hold individual

Defendants liable, and failed to allege sufficient facts to show the extent of his medical

emergency or how the denial of treatment placed Plaintiff at a substantial risk of harm.  (Docket

#8.)

The second amended complaint corrected two of these deficiencies by not identifying

Routt County as a defendant and by alleging sufficient facts to put Defendants on notice of

Plaintiff's claims.  However, despite these improvements, it does not appear that Plaintiff may

cure the remaining deficiencies raised in the present motion.  With respect to the Plaintiff's First

Claim for violation of the Eighth Amendment, the factual allegations underlying the Plaintiff's

First Claim do not support the required objective component of an Eighth Amendment claim

because the severity of the Plaintiff's ultimate harm, high blood pressure, is not "sufficiently serious." The Plaintiff's First Claim does not support the required subjective component of an Eighth Amendment claim because Plaintiff fails to allege any facts showing that Defendant knew that Plaintiff faced any harm, let alone substantial harm. The Plaintiff's Second Claim alleging Fourteenth Amendment due process violations under the special relationship doctrine and the danger creation theory is also unlikely to be cured. Defendant is not a third party, a requirement for asserting the special relationship doctrine and the danger creation theory exceptions. Additionally, Defendant's alleged actions do not shock the conscience and did not put Plaintiff in danger or increase his risk of harm. Plaintiff has also alleged insufficient facts to show that Defendant knew of any risk faced by Plaintiff. The Plaintiff's Third Claim does not name Hilling as a Defendant and is deficient for that reason.

Consequently, because it is unlikely that a "fourth" opportunity to amend will cure the current defects in the Plaintiff's Second Amended Complaint, the Court recommends that the Plaintiff be denied another opportunity to amend his pleading in this matter.

## CONCLUSION

Accordingly, for the reasons stated herein, the Court respectfully RECOMMENDS that the District Court grant Defendants' Motion to Dismiss [filed December 20, 2012; docket #19] the Second Amended Complaint, and deny the Plaintiff leave to file a Third Amended Complaint.

Dated this 7th day of March, 2013, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge